**EXHIBIT 7 TO
ANSWER AND COUNTERCLAIM
TO AMENDED COMPLAINT**

**Fisher Broyles**

Ian R. Walsworth
Partner
Direct: 303.803.6158
1400 16th Street
16 Market Square, Suite 400
Denver, CO 80202
Ian.Walsworth@fisherbroyles.com
www.FisherBroyles.com

January 8, 2024

Trent H. Baker
trent@bakerip.com
921 South Main Street #3147
Cedar City, UT 84720

Re: December 27, 2023 Correspondence

Dear Mr. Baker:

I acknowledge receipt of your letter dated December 27, 2023. At the outset, I must say we were extremely surprised to hear your assertion that the 11,766,066 Patent claims priority over _seven years_ earlier – all the way back to January 13, 2009. From our review, this claim of earlier priority is not supported by the express disclosures made by your client to the USPTO, or the information provided with your letter. We also disagree with your assertion that the TrimPro Bucker was "concealed" technology when it was on public display, with written instructions, at the 2016 Gardening Expo. We address each claim below.

**Claims Of 2009 Priority Date**

We disagree with your assertions that the "The priority date of the '066 patent is January 13, 2009" and "The TRIMPRO Bucker falls under the original disclosure of the '066 patent." It is indisputable that the _effective_ filing date of the '066 patent is September 10, 2016. Furthermore, it is apparent that Munch Machine necessarily added matter to its September 10, 2016 to support the issued claims of the '066 Patent.

Starting with the first point, as I am sure you are aware, the effective filing date of a patent is the priority date on which the application for patent is legally deemed to have been filed for the purpose of U.S. patent law. The effective filing date is the date on which the application was filed, unless priority is claimed under one of the following:

# Fisher Broyles

Trent Baker
January 8, 2024
Page 2 of 6

> (A) If the application is a continuation or divisional of one or more earlier U.S. applications or international applications and if the requirements of 35 U.S.C. 120 and 365(c), respectively, have been satisfied, the effective filing date is the same as the earliest filing date in the line of continuation or divisional applications; or
>
> (B) If the application is a continuation-in-part (CIP) of an earlier U.S. application or international application, any claims in the CIP application not supported by the specification and claims of the parent application have an effective filing date equal to the filing date of the CIP application.

Part (A) is inapplicable to the '066 Patent, as the patent did not mature from a continuation or divisional application. Further, no PCT application was filed within one year of the earlier priority date (January 13, 2009) of the '984 application. While both applications are directed to harvesting hops, neither application discloses cannabis in any form, or the use of a die member including multiple orifices. As discussed below, this is undoubtedly new matter added to the '066 Patent in September, 2016.

Turning to part (B), MPEP §211.05(I)(B) provides: "Only the claims of the continuation-in-part application that are disclosed in the manner provided by 35 U.S.C. 112(a) in the prior-filed application are entitled to the benefit of the filing date of the prior-filed application."

Thus, a claim that includes **any** material not supported by the earlier written description will have a priority date determined by the filing date of the CIP application. Upon review of the '066 patent, we note the '066 patent was designated by Munch Machine as a continuation-*in-part* of U.S. Patent Application No. 13/012,443[1] having a filing date of January 24, 2011. The '443 application in turn is a continuation-*in-part* of U.S. Patent Application No. 12/319,984[2] having a filing date of January 13, 2009. Thus, on its face, the '066 Patent acknowledges the existence of new matter added from the earlier filings.

We note the listing of inventors supports our view on the impropriety of claiming earlier priority. Both the '443 application and '984 application name three inventors:

Kerry T. Desmarais;
Thomas Carpenter, Jr.; and
Craig A. Carpenter

---

[1] Issued as U.S. Patent No. 9,961,834 on April 18, 2018.
[2] Abandoned on May 11, 2011.

# Fisher Broyles

Trent Baker
January 8, 2024
Page 3 of 6


On September 10, 2016, over seven and a half years after the January 13, 2009 filing date of the '984 application, U.S. Application No 15/261,894 was filed. The '894 application lists seven inventors:

Kerry T. Desmarais;
Thomas Carpenter, Jr.;
Craig A Carpenter;
Matthew Ryan Beechinor
Thomas Frazer;
Bill Belcourt; and
Evan Bouchier

In addition to the four new inventors (who by rule must have conceived of at least one element *claimed* by the '066 Patent), the '894 application added numerous figures and written description in comparison to the earlier filed application. More specifically, the '894 application made the first mention of, *inter alia*, cannabis and the use of a die plate having multiple apertures. Each and every *independent* claim of the '066 patent includes both a explicit reference to cannabis and a die plate having multiple apertures. Accordingly, every *dependent* claim of the '066 patent include these features. These features constitute new matter, and are not supported by the original filings. As such, the effective filing date for every claim of the '066 patent is September 10, 2016.

To further demonstrate the claims of the '066 patent contain new matter not supported in the alleged priority document, we have recently discovered a related PCT application PCT/US17/41462, which was filed on July 17, 2017, designating the USPTO as the receiving office. The '462 PCT application claims priority to the '894 application, but fails to claim priority to *either* the '443 application or the '984 application. This is as one would expect, as a PCT application must be filed within 12 months of the filing date of the first patent application (a strict time limit set by the Paris Convention). What caught our attention, however, is that the claims filed in the PCT application *are identical to* the claims filed in the '894 application, which matured into the '066 patent. This is tacit proof that all the claims of the '066 patent include subject matter **not** included in the '443 application and/or the '984 application (i.e., the priority documents). Therefore, all the claims of the '066 patent have an effective filing date of September 10, 2016 and not January 13, 2009.

As the effective filing date of all claims in the '066 patent is September 10, 2016, the prior public use and prior offer for sale of the TrimPro Bucker constitute valid prior art to the '066 patent. Furthermore, the

**Fisher Broyles**

Trent Baker
January 8, 2024
Page 4 of 6

publications of the '443 application and '984 application likewise constitute prior art to the '066 patent as they published over a year prior to the filing of the '894 application, which matured into the '066 patent. Finally, as the '894 application (as a continuation-in-part application) was filed *after* March 16, 2013, and all the claims include new subject matter, the claims are subject to post America Invents Act (AIA) treatment. *See* MPEP §2150. Accordingly, prior art that is in public use, on sale or otherwise "available" to the public before the effective filing date of the '066 patent is invalidating prior art.

**Concealed Disclosure**

Turning to your argument that the TrimPro Bucker was not publicly disclosed, and the "sale of a product with concealed technology is not a public disclosure," these assertions are simply incorrect. The public display *and* use of the TrimPro Bucker at the Gardening Expo on July 23-24, 2016 both qualify as prior art disclosures. Indeed, these are a clear an example of public use as dictated by Federal Circuit jurisprudence.

To wit; the Federal Circuit has recently affirmed that "[a]lthough prior uses are often carried out by or at the direction of the inventor-patentee, we have held that 'third party prior use accessible to the public is a section 102(b) bar.'" *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013) citing *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005). Furthermore, such public use does not require that the public was made aware of every limitation of the claimed process, if non-disclosed elements were already in the public domain. More specifically, the Federal Circuit stated:

> …we disagree with BASF that public use under § 102(b) *requires* a finding that the public was made aware of every limitation of the claimed process. Our precedent is clear that a factfinder should consider whether certain elements of the claimed invention were already in the public domain at the time of the alleged public-use or on-sale activity. Thus, we have held that § 102(b) "does not require a strict identity between the claimed invention and the device involved in the public use or on sale activities;" it only requires that "the differences between the claimed invention and the device used or sold would have been obvious to one skilled in the art."

*BASF Corporation v. SNF Holding Co.*, 955 F.3d 958, 966-967 (Fed. Cir. 2020) (emphasis added). The TrimPro Bucker was publicly displayed and used at the Gardening Expo on July 23-24, 2016 with no requirements of confidentiality to those observing the device. The open (output) side of the TrimPro

# Fisher Broyles

Trent Baker
January 8, 2024
Page 5 of 6

Bucker was not concealed in any manner, allowing members of the public to walk around and observe the inner workings of the machine. In addition, detailed written instructions were available.

To the extent that any element of the TrimPro Bucker were concealed, which we do not concede, such concealed components were already in the public domain or otherwise obvious by those skilled in the art. For instance, to the extent that the pinch rollers were not immediately apparent (a point we contest), such pinch rollers are well known in the prior art. For instance, the use of pinch rollers and their claimed spacing is set forth in U.S. Patent Publication 2011/0113740, published on May, 19, 2011. That is, the priority documents of the '066 patent, which are prior art to the '066 patent, placed these elements in the public domain.

Finally, for your further investigation, we note that there are numerous examples of commercially available, roller-based buckers that predate the effective filing date of the '066 patent. For instance, on January 16, 2016, GreenBroz Inc. issued a press release announcing the CannaGin 215, a cannabis bucker that utilizes rollers and multiple apertures to strip buds from cannabis stems:

https://www.prnewswire.com/news-releases/greenbroz-inc-launches-two-new-harvesting-products-300208357.html

The device was also publicly displayed on a public YouTube channel as of August 12, 2016:

https://www.youtube.com/watch?v=v0VSnUQ5_kk

A copy of the Greenbroz Inc. CannaGin 215 user manual from 2016 is attached for your review. Each of these publications, as well as the underlying devices, qualify as prior art to the '066 Patent.

# Fisher Broyles

Trent Baker
January 8, 2024
Page 6 of 6

**Conclusion**

After reviewing this reply and enclosures, we expect Munch Machine to immediately cease pursuing allegations of infringement of the '066 Patent against Eteros and its downstream users and customers. Regardless of your action (or inaction), please understand that Eteros reserves all rights and remedies available under the law, including the right to seek sanctions under Fed. R. Civ. P. 11 and recovery of reasonable attorneys' fees for defending against vexatious litigation if Munch Machine continues to pursue unsupported and/or invalid claims.

Sincerely,

**FISHERBROYLES, LLP**

IAN R. WALSWORTH

Cc:   PATRICIA HO, ESQ.
      RUSSELL MANNING, ESQ.





# CannaGin
## USER MANUAL

215 MODEL

# TABLE OF CONTENTS

**P.03**

DISCLOSURES

**P.04**

WARRANTY REGISTRATION & LIMITED WARRANTY

**P.05**

MACHINE PARTS

**P.06**

UNPACKING & ASSEMBLY

**P.07**

PREPARATION OF MATERIAL PRIOR TO PROCESSING

**P.08**

OPERATING THE MACHINE

**P.09**

ADDITIONAL RESOURCES

THE  ICON MEANS A VIDEO TUTORIAL OF THE SECTION CAN BE FOUND AT WWW.GREENBROZ.COM/VIDEOS

# DISCLOSURES



This machine contains rotating parts. Do not attempt to touch the rollers while the machine is operating/moving.

Long hair or loose clothing can be caught in the moving parts. Ensure that any hair or clothing is away from the rollers.

Ensure the machine is unplugged prior to any disassembly.

Do not operate the machine without the Faceplate and Shroud installed.

**Failure to comply with the above may result in serious injury.**

# WARRANTY REGISTRATION

**GO TO WWW.GREENBROZ.COM TO REGISTER.**

Click on the product registration page to register your products. You must register within 30 days from purchase date to activate your warranty.

ALL INFORMATION OBTAINED BY GREENBROZ INC. WILL BE KEPT PRIVATE AND SECURE. GREENBROZ INC. WILL NOT SHARE OR DISTRIBUTE YOUR INFORMATION WITHOUT CONSENT.

# LIMITED WARRANTY

**Products Covered**: This limited warranty is limited to GreenBroz, Inc. CannaGin products manufactured by GreenBroz, Inc. (the "Products") and provides that such product is free from defects in material and workmanship.

**Length of Warrant**y: The length of this warranty shall be **12 months** from the date of original retail purchase of the product.

**To Qualify for this Warranty**: The product must be purchased from GreenBroz, Inc. or a dealer authorized by GreenBroz, Inc. to sell the products. This warranty only applies to the first retail purchaser and is not transferable to subsequent owners.

**What GreenBroz will repair or replace under warranty**: GreenBroz, Inc. will repair or replace, at its option, any part that is proved to be defective in material or workmanship under normal use during the applicable warranty period. Warranty repairs and replacements will be made without charge for parts or labor. Anything replaced under warranty becomes the property of GreenBroz, Inc. All parts replaced under warranty will be considered as part of the original product and any warranty on those parts will expire coincidently with the original product warranty. This Limited Warranty does not cover normal wear and tear including, but not limited to: Cutting Doors and Rollers.

**To obtain Warranty Service**: Contact GreenBroz, Inc. for a return authorization and instructions for warranty repair replacement.

**Exclusions**: 1. Any damage or deterioration resulting from neglect of periodic maintenance as specified in any product owner's manual or any improper repair or maintenance.; 2. Neglect, unauthorized alteration, modifications, misuse, incorporation or use of unsuitable attachments or parts.; 3. Damage caused by dirt, pressure or steam cleaning the product, salt water, corrosion, rust, varnish, abrasives, and moisture; or 4. Any product that has ever been declared a total loss or sold for salvage by a financial institution or insurer.; 5. Damage caused by an independent third party that is not the registered owner.

**Disclaimer of Consequential Damage and Limitation of Implied Warranties**: This limited warranty is in lieu of all other expressed or implied warranties, including any warranty of FITNESS FOR A PARTICULAR PURPOSE OR USE and any implied warranty of MERCHANTABILITY otherwise applicable to this product. GreenBroz, Inc. disclaims any responsibility for loss of time or use of the product, transportation, commercial loss, or any other incidental or consequential damage, including lost profits. There are no warranties extended other than as provided herein. This limited warranty may be modified only by GreenBroz, Inc.

# MACHINE PARTS





(front)

(Rear. Shroud & Shroud Knob not pictured)

1. **Face Plate**: Contains shearing doors and prevents user exposure to rollers.
2. **Shearing Door (x4)**: Gently assists removal of flower from the stem.
3. **Shroud Knob**: Tightens and fastens the shroud to the CannaGin body.
4. **Shroud**: Prevents user exposure to the rollers and guides stem removal.
5. **Emergency Stop Swtich:** Instantly stops the CannaGin. To reset the stop button after it's been engaged, simply press down and rotate counter-clockwise until it releases back into the set position.
6. **Digital Display**: Displays Revolutions Per Minute (RPM).
7. **Foward / Reverse Switch**: Changes the rotation direction of the motor.
8. **Speed Dial**: Adjusts the rotation speed from 1-80 RPM. Clockwise for motor acceleration and counter-clockwise for motor deceleration.
9. **Operation Switch**: Go between STANDBY and RUN. The motor will rotate when switched to RUN.
10. **Stem Guide (x4)**: Feed branches from the base of the stem into 1 of the 4 holes.
11. **Ramp**: Helps guide your flowers into a container after being de-stemmed.
12. **Power Outlet Switch**: Controls power to the entire unit.
13. **Rollers**: Will pull stems through for the debudding action to occur.
14. **Power Cord** (not pictured): Supplies power to the CannaGin.

# UNPACKING & ASSEMBLY



The day has come and you have an incredible new machine in your hands!
Congratulations and Thank You!

- All parts noted in the previous sections will be included inside of your machine.
- You do not need any tools to assemble your machine, only a Box Cutter to remove it from the packaging.

1. Remove the machine from the shipping container and remove all plastic and tape.

2. Remove any additional packing material from the machine.

3. Set your machine on a sturdy tabletop or counter.

4. Bolt on the shroud using the shroud knob. *(fig. 1.A, 1.B & 1.C)*

5. Slide the (4) shearing doors into the door guides. *(fig. 1.D & 1.E)*

6. Hang the ramp from the face plate. *(fig. 1.F)*


**FIG. 1.A**


**FIG. 1.B**


**FIG. 1.C**


**FIG. 1.D**


**FIG. 1.E**


**FIG. 1.F**


**COMPLETED MACHINE**

# PRODUCT PREPARATION AND PROCESSING RECOMMENDATIONS

While the CannaGin can be used on product with a variety of moisture levels, we recommend that when using the CannaGin as a part of the GreenBroz Inc. dry-trimming process, moisture levels of the product match the recommended levels for our Dry Trimmer.

**Please note the following recommendations before operating the machine:**

- Tolerance for the machine is based on density of the product. Different strains with different moisture content will require RPM and door pressure adjustments.
- For best results, use branches that are 1 foot in length, or longer.
- Remove the top cola from your branch. *optional*
- Feed branches from the base of the stem to the top. *(fig. 2.A)*
- You may switch directions to "REVERSE" to free up any tangled stems. When switching directions the same RPM will be applied.



*FIG. 2.A*

GREENBROZ INC. CANNAGIN 215 USER MANUAL 2016       7

# OPERATION OF THE MACHINE 

**We recommend reviewing all of the disclosures and following all of the instructions to ensure optimal processing.**

**Prior to use, ensure that the machine placement is sound to prevent the machine from falling during operation.**

1. Check to make sure the main power outlet switch is in the "**OFF**" position.

2. Make sure the operation switch is in the "**STANDBY**" mode.

3. Plug in the power cord.

4. Turn main power switch "**ON**".

5. The controller should be illuminated and read 0.0.

6. Place the forward/reverse switch to the "**FORWARD**" position. Turn the dial for the desired RPM.

7. Switch the controller to the "**RUN**" mode and the machine will start rotating.

8. Adjust the dial to change the RPM.

9. Lift a Shearing Door and feed a branch into the Stem Guide. Note: y*ou may apply vertical pressure as the stem is being pulled through.*

**To reset the emergency stop button after it's been engaged, simply press down and rotate counter-clockwise until it releases back into the set position.**



Read all FAQ's & view all video tutorials at:

# WWW.GREENBROZ.COM

Other questions? Please contact us directly.



## SCHEDULE A LIVE DEMO IN YOUR AREA TODAY!

844-DRY-TRIM • INFO@GREENBROZ.COM

GREENBROZ INC. CANNAGIN 215 USER MANUAL 2016    9